**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy (134180)
Michael Goldberg (188669)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

**POMERANTZ GROSSMAN HUFFORD**
**DAHLSTROM & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
migross@pomlaw.com
jalieberman@pomlaw.com

**POMERANTZ GROSSMAN HUFFORD**
**DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. SANDERS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VERIFONE SYSTEMS, INC., DOUGLAS G. BERGERON, ROBERT DYKES, and MARC E. ROTHMAN,<br><br>Defendants. | No. C 13 1038<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

FILED BY FAX
PURSUANT TO LOCAL RULES

Plaintiff Scott A. Sanders ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding VeriFone Systems, Inc. ("VeriFone" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired VeriFone securities between December 14, 2011 and February 19, 2013, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.     VeriFone is a global provider of technology that enables electronic payment transactions and value-added services at the point of sale.  The Company's customers include financial institutions, payment processors, petroleum companies, large retailers, government organizations and healthcare companies, as well as independent sales organizations.

3.     Throughout the Class Period, Defendants made materially false and misleading

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 1 -

statements regarding the Company's business, operational and compliance policies.

4.     During the Class Period, Verifone carefully crafted an image as a Company achieving steady and consistent growth, beating analysts' forecasts for each quarter for more than two years.  In order to cultivate this image, Defendants made a series of false and/or misleading statements regarding its growth and revenues, failing to disclose that: (i) the Company did not properly execute its plan to move to a more subscriptions-based service model; (ii) past acquisitions had masked the Company's sharply declining revenue base; (iii) the Company was inappropriately recognizing revenues from distributors in periods where such revenues should have been deferred; (iv) the Company lacked adequate internal and financial controls; and (v) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

5.     While issuing these materially misleading statements, Defendants and other Company insiders disposed of more than $11 million worth of Verifone stock on an unsuspecting investing public.

6.     On February 4, 2013, the Company announced the retirement of its Chief Financial Officer ("CFO"), as well as its Vice Chairman, Ellmore Waller. Defendant Robert Dykes ("Dykes") was named as the Company's new CFO.  On this news, VeriFone stock declined $0.87 per share or nearly 2.5%, to close at $34.37 per share.

7.     On February 20, 2013, the Company disclosed its preliminary financial results for the first fiscal quarter ended January 31, 2013.  The Company announced that it expected its first quarter adjusted earnings to be between $0.47 to $0.57 per share on revenue of $424 million, falling well below analysts' profit forecast of $0.73 per share on revenue of $492 million.  Verifone largely attributed these disappointing results to weakness in European sales,

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 2 -

among other matters.  In addition to its sagging earnings, the Company also announced a new revenue recognition policy which prevented it from recognizing revenues that quarter from distributors in the Middle East and Africa.

8.     On this news, shareholders hammered Verifone's share price, causing it to spiral $13.65 per share or nearly 43%, to close at $18.24 per share on February 21, 2013.

9.     Analysts immediately voiced skepticism regarding Verifone's explanation for the Company's disappointing results.  With respect to European macroeconomic conditions, analysts noted that such conditions had a far less substantial impact on Verifone's competitors, NCR Corp. and Mircos Systems.  Moreover, several analysts suggested that the cause for the revenue shortfall was that its new CFO had taken a more conservative accounting approach than his predecessor, pointing to the Company's newly announced revenue recognition policy in Africa and the Middle East.  Indeed, as noted by an analyst at Duetsche Bank, "***the recent CFO retirement/resignation and the first quarter revenue recognition requirements could also suggest accounting red flags in prior quarters***" (emphasis added).

10.    As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

13.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as VeriFone's principal place of business is located within this District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff as set forth in the attached Certification, acquired VeriFone securities at artificially inflated prices during the Class Period and has been damaged thereby.

16.     Defendant VeriFone is a Delaware corporation with its principal executive offices located at 2099 Gateway Place, Suite 600, San Jose, CA 95110.  VeriFone's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "PAY."

17.     Defendant Douglas G. Bergeron ("Bergeron") was, at all relevant times, the Company's Chief Executive Officer.

18.     Defendant Robert Dykes ("Dykes") was the Company's Chief Financial Officer ("CFO") and Executive Vice President between September 2008 and February 2013.

19.     Defendant Marc E. Rothman ("Rothman") has been the Company's Executive Vice President and CFO since February 2013.

20.     The defendants referenced above in ¶¶ 17 – 19 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS
## Background

21.     VeriFone is a leading global provider of payment solutions that enable secure electronic payment transactions and value-added services at the point of sale ("POS"). The Company provides payment solutions and expertise at the POS via merchant-operated, consumer facing, and self-service systems for, among others, the financial, retail, hospitality, petroleum, transportation, government, and healthcare markets.  The Company's payment solutions consist of POS electronic payment devices that run our proprietary and third-party operating systems, security, encryption, application, and certified payment software as well as other value-added applications. The Company's payment solutions are able to process a wide range of payment types, including signature and PIN-based debit cards, credit cards, contactless or radio frequency identification ("RFID") cards and tokens, near field communication ("NFC") enabled mobile phones, EMV (Europay, MasterCard and VISA) based payment cards, prepaid gift and other stored-value cards, electronic funds transfer ("EFT"), check authorization and conversion, signature capture, and electronic benefits transfer ("EBT").

### Materially False and Misleading
### Statements Issued During the Class Period

22.     On December 14, 2011, the Company announced financial and operating results for the fourth quarter and fiscal year ended October 31, 2011.  For the quarter, the Company reported net income of $199 million, or $1.84 diluted earnings per share ("EPS") and net revenue of $411 million, as compared to net income of $49 million, or $0.55 diluted EPS and net revenue of $276 million for the same period a year ago.  For the year, the Company reported net income of $282 million or $2.92 diluted EPS and net revenue of $1.3 billion, as compared to net income of $99 million, or $1.13 diluted EPS and net revenue of $1 billion for the same period a year ago.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 5 -

23.     On December 23, 2011, the Company filed an annual report for the year ended October 31, 2011 on a Form 10-K with the SEC, which was signed by, among others, Defendants Bergeron and Dykes, and reiterated the Company's previously announced financial results and financial position.   In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On March 5, 2012, VeriFone issued a press release announcing its financial and operating results for the quarter ended January 31, 2012.   For the quarter, the Company reported net loss of $3 million, or ($0.03) diluted EPS and net revenue of $420 million, as compared to net income of $32 million, or $0.35 diluted EPS and net revenue of $284 million for the same period a year ago.

25.     On March 12, 2012, the Company filed a quarterly report for the period ended January 31, 2012 on a Form 10-Q with the SEC, which was signed by Defendants Bergeron and Dykes, and reiterated the Company's previously announced quarterly financial results and financial position.   In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     On April 30, 2012, the Company issued a press release reaffirming its organic growth estimates.   Specifically, the press release stated the following in relevant part:

> VeriFone Systems, Inc. (NYSE: PAY), issued the following statement regarding a report on organic growth calculations that was disseminated this morning from Deutsche Bank.

VeriFone uses a methodology of calculating organic growth prescribed by the vast majority of investors and Wall Street analysts: excluding revenue of all acquired companies, large and small, until 12 months after acquisition.

Deutsche Bank is choosing to include in its calculation the revenue of acquired companies as if VeriFone had owned them for the entire current and year-ago period. We believe this does not reflect the true organic results of VeriFone's business and we reaffirm our expectations for 10-15% organic growth rates for fiscal year 2012 and long-term.

27.     On May 24, 2012, VeriFone issued a press release announcing its financial and operating results for the quarter ended April 30, 2012.  For the quarter, the Company reported net income of $15 million, or $0.13 diluted EPS and net revenue of $472 million, as compared to net income of $25 million, or $0.27 diluted EPS and net revenue of $292 million for the same period a year ago.

28.     On June 11, 2012, the Company filed a quarterly report for the period ended April 30, 2012 on a Form 10-Q with the SEC, which was signed by Defendants Bergeron and Dykes, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On September 5, 2012, VeriFone issued a press release announcing its financial and operating results for the quarter ended July 31, 2012.  For the quarter, the Company reported net income of $38 million, or $0.34 diluted EPS and net revenue of $489 million, as compared to net income of $26 million, or $0.28 diluted EPS and net revenue of $317 million for the same period a year ago.

30.    On September 10, 2012, the Company filed a quarterly report for the period ended July 31, 2012 on a Form 10-Q with the SEC, which was signed by Defendants Bergeron and Dykes, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.    On December 13, 2012, the Company announced financial and operating results for the fourth quarter and fiscal year ended October 31, 2012.  For the quarter, the Company reported net income of $27 million, or $0.24 diluted EPS and net revenue of $485 million, as compared to net income of $199 million, or $1.84 diluted EPS and net revenue of $411 million for the same period a year ago.  For the year, the Company reported net income of $65 million, or $0.59 diluted EPS and net revenue of $1.9 billion, as compared to net income of $282 million or $2.92 diluted EPS and net revenue of $1.3 billion for the same period a year ago.

32.    On December 19, 2012, the Company filed an annual report for the year ended October 31, 2012 on a Form 10-K with the SEC, which was signed by, among others, Defendants Bergeron and Dykes, and reiterated the Company's previously announced financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Bergeron and Dykes, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.    The statements referenced in ¶¶ 22-32 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts,

which were known to defendants or recklessly disregarded by them, including that: (i) the Company did not properly execute its plan to move to a more subscriptions-based service model; (ii) past acquisitions had masked the Company's declining revenue base; (iii) the Company inappropriately recognized revenues in periods where they should have been deferred; (iv) the Company lacked adequate internal and financial controls; and (v) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

### THE TRUTH BEGINS TO EMERGE

34.    On February 4, 2013, the Company disclosed the retirements of Defendant Dykes and Vice Chairman Elmore Waller, as well as the appointment of Defendant Rothman as the Company's new CFO.

35.    On this news, VeriFone's shares declined $0.87 per share or nearly 2.5%, to close at $34.37 per share on February 4, 2013.

36.    On February 20, 2013, after the market closed, the Company issued a press release announcing preliminary financial results for the first fiscal quarter ended January 31, 2013.  The Company disclosed its forecast of revenues of $424 million, compared to analysts' average estimate of $492 million, representing the first time in two years that the Company failed to beat analysts' estimates.  The press release stated the following, in relevant part:

> VeriFone expects to report Q1 non-GAAP net revenues in the range of $425 million to $430 million and Q1 GAAP net revenues in the range of $424 million to $428 million.  VeriFone expects to report non-GAAP net income per share between $0.47 and $0.50 and GAAP net income per share between $0.07 and $0.10.

> The lower than expected results for the first quarter were driven primarily by:

> • Continued weak macro-economic conditions in Europe;

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 9 -

- Increased focus and investments throughout 2012 on longer-term service initiatives in multiple jurisdictions at the expense of near-term hardware and software features and customization projects that were reduced or delayed, which resulted in missed revenue opportunities;
- An increase in deferred revenue related to volume shipments made during the quarter to a new mix of customers in the Middle East and Africa. These shipments did not meet first quarter revenue recognition requirements;
- Lower than anticipated revenue from large Brazilian customers, as well as political and economic uncertainty in Venezuela, typically a strong market for VeriFone; and
- Several customers electing to delay major projects beyond the first quarter, as well as the cancelled Washington, D.C. taxi project.

"During the first quarter we faced a number of external headwinds and internal challenges, which impacted our results," said Douglas G. Bergeron, Chief Executive Officer. "While we are disappointed with our performance and execution, we have a firm grasp on the challenges we faced and are taking aggressive steps to strengthen our competitiveness over the long-term. Although the focus on our services efforts impacted some local software and hardware modifications that were required to be competitive, our product platform and architecture are consistently recognized by the industry as being best-in-class. We are confident in our ability and committed to executing against our strategic priorities to drive shareholder value."

The company is executing steps to address the current challenges, including:

- Conducting a comprehensive review of VeriFone's strategic operating plan to ensure near-term product priorities are provided for, even as the company continues to increase its services offerings.
- Increasing management focus and R&D investment on product development and certifications to accelerate the release of in-demand products throughout fiscal 2013; and
- Driving cost efficiencies, including streamlining and better integrating recently completed acquisitions.

"Our industry remains vibrant and offers tremendous opportunity for growth especially around complexity at the point of sale and EMV mandates," continued Bergeron. "We expect EMV to expand the total addressable market in the U.S., and major industry trends such as growth in retail mobility and the increased need for more sophisticated security systems to create additional opportunities for our industry. As the trusted and innovative partner of merchants worldwide, VeriFone is uniquely positioned to capitalize on these trends."

Bergeron said, "Over the last few years, we have built a portfolio of services, which have gained considerable traction in the market. We are confident this progress will allow us to derive higher overall revenue and margins, develop

deeper relationships with our customers and drive more predictable financial results.  For example, our Point payments-as-a-service business has enjoyed early success, and we are exporting the model to new regions including Australia, New Zealand, continental Europe and the U.S."

Bergeron concluded, "We are encouraged by the performance of our North America region and payments-as-a-service offerings in the existing Point markets, which both saw quarterly net revenue grow by double-digit percentage points year-over-year.  We remain optimistic about our business prospects with upcoming growth drivers such as the U.S. EMV mandate, and we continue to build on our taxi, gas pump and national retailer customer base.  We are moving forward and remain committed to expanding our payments-as-a-service business, while continuing to accelerate our product development and certifications.  Based upon this, we expect to resume year-over-year net revenue growth in the mid- to high-single digits beginning in fiscal 2014."

The company's updated outlook for the second quarter includes:

- Non-GAAP net revenues in the range of $435 million to $450 million;
- Non-GAAP net income per share in the range of $0.45 to $0.50;
- The company expects that non-GAAP net revenues and non-GAAP net income per share will grow sequentially in the third and fourth quarters of fiscal 2013.

37.     Analysts were immediately alarmed by the disappointing results, voicing strong skepticism regarding the Company's explanation for the decline.  Reuters published a news article entitled, "Verifone shares nearly halve, analysts query management."  The article stated the following in relevant part:

VeriFone shares slid to $17.93, their lowest in nearly three years, and at least seven analysts cut their price targets on the stock. Deutsche Bank, in a client note, said the company had finally admitted it had failed to execute on its plans to move to a more subscription-based service model.

Several analysts suggested that VeriFone's new chief financial officer had taken a more conservative accounting approach at the company, which already faces a court case for a past accusation of reckless accounting.

The company will likely be sold, SunTrust Robinson Humphrey analyst Andrew Jeffrey wrote in a note, cutting his rating on the stock to "neutral" from "buy."

"Management credibility has been lost," he said. "Market share losses are deeper and more persistent than we had previously believed."

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 11 -

"We believe VeriFone will be acquired before it completes its business model transition."

\*\*\*

The company might have been aggressively shifting to services from hardware sales and the management took its eye off the ball in terms of product evolution, allowing rival Ingenico SA to take market share, analysts said.

\*\*\*

VeriFone largely attributed its lower-than-expected first quarter estimates to weakness in Europe, lower-than-expected revenue from large customers in Brazil, delayed customer spending on major projects, and the cancellation of a Washington, D.C. taxi project.

Deutsche, which rates the stock a "sell", slashed its price target to $15 from $27. The brokerage said past acquisitions had masked what was happening at the company and that it had long been wary of its "aggressive accounting recognition."

"The recent CFO retirement/resignation and the first-quarter revenue recognition requirements could also suggest accounting red flags in prior quarters," Deutsche said, noting the latest quarter's accounts had been signed off by the new CFO.

\*\*\*

Until the latest quarter, VeriFone had met or beaten analysts' quarterly estimates for two years.

Analysts on Thursday rejected the company's argument that its problems came from the weak economy. While macro conditions may have had an impact on business in the quarter, the global economy has had far less of an impact on peers such as NCR Corp. and Micros Systems, said Wedbush analyst Gil Luria, who cut his price target to $22 from $33.

Citi Research analyst Philip Stiller cut his rating on the stock to "neutral" from "buy" and price target to $23 from $47.

"(VeriFone) has a long uphill battle to rebuild trust and belief in the company on top of ongoing execution issues in a rapidly changing payments landscape," he said in a note.
VeriFone warned late on Wednesday that it expected its first quarter adjusted earnings to be 47 to 50 cents per share on revenue of $424 million to $428 million. That is well short of the average analyst profit forecast of 73 cents per share on revenue of $492 million.

The company forecast an adjusted profit of 45 to 50 cents per share in the current quarter, well below the average analyst forecast of 80 cents, according to Thomson Reuters I/B/E/S.

One of the company's biggest problems was the cancellation of the Washington, D.C. contract. VeriFone announced last year that it won a $35 million-plus contract to install and support payment systems in 6,500 taxis in the capital.

38.     Similarly, an article on the website of Seeking Alpha entitled, "VeriFone Now a Falling Knife" noted that the management's explanations for the shortfall were not plausible, pointing to potential accounting manipulations.   The article stated the following in relevant part:

> VeriFone management seems to appreciate that results like these require some explanation, but I'm not entirely sure I accept the reasons they've offered.
>
> Management mentioned weak conditions in Europe.  Fair enough - we all know that conditions in Europe are pretty tough.  Buy why, then, is Europe-based Ingenico not seeing the same trouble?
>
> VeriFone management also talked about a new accounting policy regarding revenue recognition that meant revenue from new distributors in the Mideast and Africa was not recognized this quarter.  With a new CFO on board that, too, is a credible explanation.  Unfortunately, it also feeds into one of the more persistent bear stories about VeriFone – that the company has been a little too aggressive with its accounting in the past (including its calculation of organic growth).  If management was overstating past revenue growth, that could explain why the business has seemingly hit such a hard wall now.
>
> Other, more routine, business issues also factored into the miss.  The Company saw its Washington D.C. taxi project go up in smoke, and revenue from Brazil was weaker than expected.
>
> Last and not least were management's acknowledgments of operational errors.  In particular, it sounds like the company made some meaningful mistakes on system upgrades with customers.  At the same time, the company appeared to drop the ball on the hardware side of the business, losing share to Ingenico in the process.
>
> **How Deep Do The Problems Go?**
>
> Although management has been pretty confident in its dealings with the Street in recent quarters, I think the company may have more challenges than it wishes to acknowledge. In particular, I think competition from Square in the small business

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 13 -

arena and Ingenico in the large business market is hurting VeriFone more than it wants to acknowledge.

At the same time, a couple of large recent acquisitions haven't really added a lot of value. Not only has the company not seen a major pick up in revenue (which really wasn't the expectation at this point in the process), but it looks like the process of integrating the deals and realizing synergies has not gone as well as hoped. Here again, then, we have a direct potential issue with management's ability to execute and operate.

I have to say that I am worried on the execution angle. VeriFone terminals are everywhere (roughly two-thirds share of U.S. customer-facing terminals), so I just don't understand why Square and Intuit were able to get a tablet/smartphone device into the market ahead of them. What's more, in talking to merchants who use Square I have yet to meet one that isn't very happy with the system, and many don't have any interest in going back to VeriFone. Said differently, it seems to me that Square and Intuit asked merchants what they wanted and acted accordingly, while VeriFone may be operating on the assumption that the market will follow where they lead

If these operational missteps are in fact real, that doesn't bode well for the future. NCR and Micros are both looking to capture more and more of markets like fraud prevention by building them into the cash registers/payment terminals. Likewise, NCR and Micros have shown themselves to be pretty good operators, and that raises the question of how VeriFone will fare when mobile payments become commonplace - particularly if the near field communications approach of companies like Broadcom take off and become commonplace in mobile devices. Likewise, the company has to be careful in mobile not to alienate the independent sales organizations (ISOs) that it works with.

39.    On this news, VeriFone's stock declined $13.65 per share or nearly 43%, to close at $18.24 per share on February 21, 2013.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired VeriFone securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, VeriFone securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by VeriFone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of VeriFone;

- whether the Individual Defendants caused VeriFone to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of VeriFone securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- VeriFone securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold VeriFone securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants for Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder)

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of VeriFone securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire VeriFone securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

51.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the

quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for VeriFone securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about VeriFone's finances and business prospects.

52.   By virtue of their positions at VeriFone, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.   Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of VeriFone securities from their personal portfolios.  During the Class Period, Company insiders sold 247,805 VeriFone shares for gross proceeds of more than $11 million.

54.   Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of VeriFone, the Individual Defendants had knowledge of the details of VeriFone's internal affairs.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 18 -

55.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of VeriFone.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to VeriFone's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of VeriFone securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning VeriFone's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired VeriFone securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

56.     During the Class Period, VeriFone securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of VeriFone securities at prices artificially inflated by defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of VeriFone securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of

VeriFone securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

59.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     During the Class Period, the Individual Defendants participated in the operation and management of VeriFone, and conducted and participated, directly and indirectly, in the conduct of VeriFone's business affairs.  Because of their senior positions, they knew the adverse non-public information about VeriFone's misstatement of income and expenses and false financial statements.

61.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to VeriFone's financial condition and results of operations, and to correct promptly any public statements issued by VeriFone which had become materially false or misleading.

62.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which VeriFone disseminated in the marketplace during the Class Period concerning VeriFone's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause VeriFone to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of VeriFone within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of VeriFone securities.

63.     Each of the Individual Defendants, therefore, acted as a controlling person of VeriFone.  By reason of their senior management positions and/or being directors of VeriFone, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, VeriFone to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of VeriFone and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by VeriFone.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.   Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.   Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.   Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  March 7, 2013                              Respectfully submitted,

GLANCY BINKOW & GOLDBERG LLP

Lionel Z. Glancy
Michael Goldberg
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
migross@pomlaw.com
jalieberman@pomlaw.com

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 22 -

# <u>Certification of Plaintiff</u>
# <u>Pursuant to Federal Securities Laws</u>

1.    I, Scott A. Sanders, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed a Complaint against VeriFone Systems, Inc., ("VeriFone"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my VeriFone securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.   I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in VeriFone securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

**Executed** __**March 1, 2013**__ **, at** _____**Germantown, TN**_____
                    **(Date)**                              **(City, State)**

_____
**(Signature)**

_____Scott A. Sanders_____
**(Type or Print Name)**

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|------|------------------------------------|--------------------------|-------------------|
| 02/17/2012 | Purchase | 200 shares common | 46.00 |
| 03/29/2012 | Sale | 200 shares common | 51.0101 |
| 05/24/2012 | Purchase | 750 shares common | 40.08 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |