UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE VERIFONE SECURITIES
LITIGATION

Case No. 5:13-cv-01038-EJD

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. No. 86

Lead Plaintiffs the Selz Family 2011 Trust, Karnak Partners L.P., Ermitage Selz Fund Ltd., GAM Selection Hedge Investments Inc., and Bernard Selz (collectively, "Plaintiffs") filed the instant securities class action against Defendants VeriFone Systems, Inc. ("VeriFone" or "Company"), Douglas G. Bergeron ("Mr. Bergeron"), and Robert Dykes ("Mr. Dykes") (collectively, "Defendants"), alleging violation of federal securities fraud statutes. Presently before the court is Defendants' Motion to Dismiss the Second Amended Class Action Complaint. See Dkt. No. 86.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331, and Section 27 of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa. The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b), and previously vacated the associated hearing. Having carefully reviewed the parties' briefing, the court grants Defendants' motion for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

VeriFone is a leading provider of technology and services that enable secure electronic payment transactions and value-added services at the point of sale ("POS"). Second Am. Compl.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  at ¶¶ 2, 28.  VeriFone has approximately a 40% global market share of stand-alone POS terminals,

2  and its customers include financial institutions, petroleum companies, large retailers, government

3  organizations, and healthcare companies, among others.  Id. at ¶ 2.  Mr. Bergeron was VeriFone's

4  CEO and member of the board of directors, and Mr. Dykes was VeriFone's CFO and Executive

5  Vice President.  Id. at ¶¶ 18-19.

6       Plaintiffs allege that since becoming a public company in May 2005, VeriFone has

7  acquired numerous companies, including competitors, in an effort to transform itself from a

8  business relying solely on terminals and hardware (referred to as "systems solutions") to a

9  business more focused on services.  Id. at ¶¶ 3, 33.  Plaintiffs allege the transition of business

10 model was unsuccessful, and was negatively impacting VeriFone's main revenue stream that

11 continued to rely on systems solutions.  Id. at ¶ 3.  Moreover, Plaintiffs allege that research and

12 development ("R&D") expenditures necessary to keep the systems solutions current and

13 competitive were declining, thus further impacting the main revenue stream relying on systems

14 solutions.  Id.

15      According to Plaintiffs, despite the negative impact on VeriFone's main revenue stream,

16 Defendants attempted to maintain the image of VeriFone as a growing company and success story.

17 Id. at ¶ 5.  To support this image, in 2007, VeriFone allegedly made material accounting

18 misstatements related to one of its acquisitions.  Id.  The accounting violations, however, led to the

19 Securities and Exchange Commission ("SEC") filing an action against VeriFone in September

20 2009.  Id. at ¶¶ 5, 37-38.  The SEC action resulted in an entry of final judgment against VeriFone,

21 and VeriFone consented to a permanent injunction against violations of the reporting, internal

22 controls, and other provisions of federal securities law.  Id. at ¶¶ 5, 39.  Plaintiffs claim that the

23 conduct alleged in the instant action constitutes a violation of the permanent injunction.  Id. at ¶ 5.

24      Plaintiffs allege that between December 14, 2011 and February 20, 2013 (the "Class

25 Period"), VeriFone constructed an image as a company achieving steady and consistent growth.

26 Id. at ¶¶ 6, 53.  To maintain this image, Defendants allegedly made a series of materially false

27 and/or misleading statements regarding its growth and revenues, while omitting to disclose that:

28

Case No.: 5:13-cv-01038-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1   (1) the Company had failed to execute its plan of transitioning to a more service-centered model;

2   (2) the Company was not adequately investing in R&D for its core hardware POS products, which

3   would have allowed the Company to remain competitive; and (3) the Company engaged in

4   improper revenue recognition practices.  Id. at ¶ 6.

5         On February 20, 2013, VeriFone issued a press release announcing preliminary financial

6   results for the first fiscal quarter that ended January 31, 2013.  Id. at ¶ 131.  The Company

7   disclosed revenues of $424 to $428 million, which were lower than the analysts' average estimate

8   based on the Company guidance of $492 million.  Id.  Consequently, VeriFone's stock allegedly

9   declined $13.65 per share, or 43%, closing at $18.24 per share.  Id. at ¶ 136.  VeriFone offered the

10  following rationales for these low results: (1) purported weakness in European demand; (2)

11  inability to customize/localize its products as investments went into service initiatives; (3) revenue

12  recognition issues in the Middle East/Africa; (4) lower than anticipated Brazilian and Venezuelan

13  revenue; and (5) delay in certain large contracts such as one covering Washington, D.C. taxi

14  service.  Id. at ¶¶ 8, 131.  Plaintiffs allege that analysts immediately voiced sharp skepticism

15  regarding VeriFone's explanations, believing that they were pretexts for larger issues concerning

16  how the Company was being managed.  Id. at ¶¶ 10, 132-34.  On March 11, 2013, Plaintiffs allege

17  Mr. Bergeron unexpectedly announced his resignation as CEO and Board Member, after having

18  served as CEO since founding the Company in 2002.  Id.

19        Plaintiffs commenced this action on March 7, 2013, entitled as Sanders v. VeriFone

20  Systems, Inc., et al.  See Dkt. No. 1.  In August 2013, the court related the instant action with

21  Zoumboulaskis v. McGinn, et al., Case No. C 13-02379 PSG (N.D. Cal.).  See Dkt. No. 57.  In

22  December 2013, Plaintiffs filed a First Amended Class Action Complaint.  See Dkt. No. 71.

23  Defendants subsequently moved to dismiss the complaint, which the court granted.  See Dkt. No.

24  82.  In October 2014, Plaintiffs filed a Second Amended Class Action Complaint, which is the

25  operative complaint.  See Dkt. No. 85.  Plaintiffs assert two claims: (1) violations of Section 10(b)

26  of the Exchange Act and SEC Rule 10b-5; (2) violation of Section 20(a) of the Exchange Act.  See

27  id.

28

3

Case No.: 5:13-cv-01038-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    Defendants filed the instant Motion to Dismiss in December 2014.  See Mot., Dkt. No. 86.

2  This matter has been fully briefed.  See Opp'n, Dkt. No. 91; Reply, Dkt. No. 93.

3  **II.    LEGAL STANDARD**

4    Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

5  specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

6  it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

7  complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

8  upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is

9  appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

10  a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

11  Cir. 2008).  Moreover, the factual allegations "must be enough to raise a right to relief above the

12  speculative level" such that the claim "is plausible on its face."  Twombly, 550 U.S. at 556-57.

13    Claims that sound in fraud are subject to a heightened pleading standard.  Fed. R. Civ. P.

14  9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

15  constituting fraud or mistake."); Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule

16  9(b) imposes heightened pleading requirements where 'the object of the conspiracy is

17  fraudulent'").  The allegations must be "specific enough to give defendants notice of the particular

18  misconduct which is alleged to constitute the fraud charged so that they can defend against the

19  charge and not just deny that they have done anything wrong."  Semegen v. Weidner, 780 F.2d

20  727, 731 (9th Cir. 1985).  This generally requires "an account of the time, place, and specific

21  content of the false representations as well as the identities of the parties to the

22  misrepresentations."  Swartz, 476 F.3d at 764.  In other words, fraud or claims asserting fraudulent

23  conduct must generally contain more specific facts than is necessary to support other causes of

24  action.

25    When deciding whether to grant a motion to dismiss, the court generally "may not consider

26  any material beyond the pleadings."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

27  1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider material submitted as part of

28  

United States District Court
Northern District of California

1    the complaint or relied upon in the complaint, and may also consider material subject to judicial

2    notice.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

3        In addition, the court must generally accept as true all "well-pleaded factual allegations."

4    Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  The court must also construe the alleged facts in the

5    light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).

6    However, "courts are not bound to accept as true a legal conclusion couched as a factual

7    allegation."  Iqbal, 556 U.S. at 678.

8    **III.    DISCUSSION**

9        Defendants move to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5, as well

10   as the claim under Section 20(a).  Each of these claims will be addressed in turn.

11       **A.    Claim Under Section 10(b) and Rule 10b-5**

12       "Under Rule 10b-5, it is unlawful for 'any person, directly or indirectly, to make any

13   untrue statement of a material fact' in connection with the purchase or sale of securities."  Janus

14   Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301 (2011) (quoting 17 C.F.R. §

15   240.10b-5(b)) (internal quotations omitted).  "The SEC promulgated Rule 10b-5 pursuant to

16   authority granted under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)," to

17   provide for a private right of action.  Id.

18       To balance the competing forces of providing a private right of action that serves to instill

19   public confidence in the marketplace while deterring abusive litigation by private parties,

20   Congress enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA").  In re

21   ChinaCast Educ. Corp. Sec. Litig., 807 F.3d 471, 474 (9th Cir. 2015).  The PSLRA "imposes

22   exacting pleading requirements that require plaintiffs to state with particularity both the facts

23   constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention

24   to deceive, manipulate, or defraud."  Id.  As such, securities fraud class actions must meet the

25   heightened pleading standard of Rule 9(b) and the PSLRA.  Or. Pub. Emps. Ret. Fund v. Apollo

26   Grp. Inc., 774 F.3d 598, 604 (9th Cir. 2014).  If the PSLRA statutory requirements are not met, the

27   complaint must be dismissed.  15 U.S.C. § 78u-4(b)(3)(A).

28

Case No.: 5:13-cv-01038-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

To plead a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation."  Apollo Grp. Inc., 774 F.3d at 603.  Here, in dispute is whether Plaintiffs have adequately pled the first, second, and sixth elements.  Each of these elements is subject to the heightened pleading standard.  See id. at 605 ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation").

### i.   Material Misrepresentation or Omission

To adequately plead material misrepresentation or omission, the PSLRA requires the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B); see Apollo Grp. Inc., 774 F.3d at 604.

In pleading a material misrepresentation, the Ninth Circuit distinguishes an objective false statement from business puffery.  "'Puffing' concerns expressions of opinion, as opposed to knowingly false statements of fact: When valuing corporations, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers." Apollo Grp. Inc., 774 F.3d at 606.  "Statements by a company that are capable of objective verification are not 'puffery' and can constitute material misrepresentations." Id.

An omission "generally refers to the failure to disclose material information about a company, as opposed to affirmative manipulation." Desai v. Deutsche Bank Sec. Ltd., 573 F.3d 931, 939 (9th Cir. 2009).  "The person who omitted the material information must have had a duty to disclose it to the person supposedly harmed by the omission." Id.

In this case, Plaintiffs' allegations concerning misrepresentations and omissions involve four areas: (1) VeriFone's business model transition from hardware sales to payment as a service ("PaaS"); (2) allocation of R&D funds; (3) the SAIL platform; and (4) the SEC permanent injunction.

Case No.: 5:13-cv-01038-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

a.  *Business Model Transition*

Plaintiffs argue that Defendants made certain statements during the Class Period regarding the success of VeriFone's business model transition, but that those statements were false because the business transition was failing.  Opp'n at 7-8.  Relying on confidential witnesses, Plaintiffs contend that at the time Defendants made the representations of success, PaaS sales were decreasing, the transition to PaaS was going slower than was represented to investors, and the revenue derived from services could not make up for the shortfall in revenue derived from hardware.  Id. at 9.  Defendants, however, contend that Plaintiffs allegations are insufficient to constitute material misrepresentations.  Reply at 2-3.

In their brief, Plaintiffs highlight at least three alleged misrepresentations pertaining to VeriFone's business model transition.  First, Plaintiffs allege that on December 14, 2011, VeriFone issued a press release announcing its financial results for fiscal year ending October 31, 2011, and the press release quoted Mr. Bergeron stating: "We finished 2011 with another year of record revenues and record profit, and are now midway through our multi-year transformation to the world's leading services-driven payment technology provider."  Second Am. Compl. at ¶ 84.  According to Plaintiffs, this statement was misleading because Mr. Bergeron knew the Company could not become the "world's leading services-driven payment technology provider" due to the failure of the business model transition.  Id. at ¶ 85.  In evaluating Mr. Bergeron's statement, the court agrees with Plaintiffs that the statement could constitute a material misrepresentation.  Stating that the 2011 year ended with "another year of record revenues and record profit" is a statement capable of objective verification since it implies that the 2011 year exceeded the revenue and profit figures from previous years.  One can objectively verify the amount of revenue and profit generated in previous years, and reasonably infer that the 2011 year ended with figures that exceed those from previous years.  Moreover, it is significant that the statement was communicated through a press release because it was meant for wide dissemination and it required the company to formulate carefully-crafted language reflecting its revenue growth.  In construing the alleged facts in the light most favorable to Plaintiffs, this statement could be determined either

7

1    true or false on an objective standard, and not as mere puffery or opinion.  See Apollo Grp. Inc.,

2    774 F.3d at 606 (noting that a statement is a material misstatement when it can be true or false in

3    an objective standard).  As such, Plaintiffs have sufficiently pled this statement to be a material

4    misrepresentation.

5        Second, Plaintiffs allege that in December 2011, Mr. Bergeron announced:

6

7            We completed a very complicated takeover of Hypercom, and then
             proceeded to rapidly integrate the business, and we are already
8            enjoying significant operating synergies . . . . Our focus on services
             is reaping great rewards for our shareholders.  Growth rates have
9            accelerated, margins are expanding and we have developed unique
             advantages in our product portfolio, as they are increasingly bundled
             with encryption services, content and advertising, gateway services
10           and cloud-based retail application processing.

11   Second Am. Compl. at ¶ 88.  According to Plaintiffs, this statement was misleading because Mr.

12   Bergeron knew the business model transition was failing while investors were led to believe the

13   transition was increasing the value of the Company.  Id. at ¶ 90.  This allegation is deficient

14   because Plaintiffs do not allege the specifics of how the statement was published, whether it was

15   in the form of a conference call, press release, or other medium of communication.  Without such

16   context, it is unknown how widely the statement was disseminated and if it could have reached an

17   investor.  In addition, the statement is vague and does not provide with specificity any information

18   that is capable of objective verification.  See Apollo Grp. Inc., 774 F.3d at 606 (noting that

19   describing growth as "significant events" is vague, and such statements provide nothing concrete

20   upon which a plaintiff could reasonably rely).  Given the absence of a specific statement of fact,

21   this statement cannot constitute an actionable misrepresentation.

22       Third, Plaintiffs allege that on September 5, 2012, Mr. Bergeron stated the following at the

23   Company's quarterly analyst conference call:

24           The deployment of the payment-as-a-service, all in one model,
             across Point's home markets continues to be extremely successful . .
25           . . We're focused on everything everywhere around services.  Our
             general managers, our salespeople are compensated to turn what
26           would be a complicated product sale into a more complicated
             services sale.  It does provide a little bit of a headwind on revenue
27           growth.  I think we can manage through that.

28
     Case No.: 5:13-cv-01038-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    (the "September 5 conference call").  Second Am. Compl. at ¶ 111.  According to Plaintiffs, this

2    statement is misleading because Mr. Bergeron knew the business model transition was failing.  Id.

3    at ¶ 112.  Relying on confidential witnesses, Plaintiffs allege that PaaS sales were decreasing, the

4    transition to a PaaS business was going slower than was represented to investors, and the revenue

5    derived from services could not make up for the shortfall in the revenue derived from hardware

6    sales.  Id.  The court disagrees with Plaintiffs' characterization that this statement is misleading.

7    To the contrary, Mr. Bergeron states that the services sale "does provide a little bit of a headwind

8    on revenue growth," acknowledging that the business model transition poses challenges.  See

9    Apollo Grp. Inc., 774 F.3d at 606 (noting that "investors do not rely on vague statements of

10   optimism").  There is no indication that Mr. Bergeron made a false statement of fact that could

11   constitute a misrepresentation.

12          Lastly, to establish that all of Mr. Bergeron's statements were misleading, Plaintiffs point

13   to VeriFone's purported explanations for the lower-than-expected revenues announced on

14   February 20, 2013.  Opp'n at 8.  VeriFone allegedly stated the results were partly driven by

15   "[i]ncreased focus and investments throughout 2012 on longer-term service initiatives in multiple

16   jurisdictions at the expense of near-term hardware and software features;" and the Company was

17   executing steps to address challenges such as "[d]riving cost efficiencies, including streamlining

18   and better integrating recently completed acquisitions."  Second Am. Compl. at ¶ 131.  These

19   allegations, however, do not support Plaintiffs' arguments that Mr. Bergeron's earlier statements

20   were false statements of fact.  Instead, they appear to be a self-evaluation of what caused lower-

21   than-expected revenues and ways to improve.  In sum, Plaintiffs have inadequately pled a material

22   misrepresentation as it pertains to VeriFone's business model transition.

23                         b.  *Allocation of R&D Funds*

24          Next, Plaintiffs argue that the acquisitions VeriFone made from December 2010 through

25   March 2012 severely strained the Company's ability to integrate the various businesses and

26   accounting systems, and created significant problems in allocating R&D funds between the

27   traditional hardware business and the newly-emphasized services business.  Opp'n at 9.  Plaintiffs

28   Case No.: 5:13-cv-01038-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    argue that Defendants failed to disclose the negative impact on R&D.  Id. at 10.

2        In their brief, Plaintiffs highlight at least three alleged misrepresentations and omissions

3    pertaining to VeriFone's allocation of R&D funds.  First, Plaintiffs allege that on December 4,

4    2011, the Company held a conference call with analysts where Mr. Bergeron stated: "We've made

5    significant progress in improving the Hypercom supply chain and logistics model, and of

6    rationalizing R&D investment for a combined company."  Second Am. Compl. at ¶ 86.  According

7    to Plaintiffs, this statement was misleading because Mr. Bergeron knew that due to the significant

8    R&D investment required for the suite of products inherited from Hypercom, the Company did not

9    invest adequately in hardware R&D after the acquisition.  Id. at ¶ 87.  Plaintiffs allege that the

10   "progress" touted by Mr. Bergeron did not exist.  Id.  This argument, however, is unpersuasive

11   because the statement is vague and sounds more of optimism rather than a false statement.  See

12   Apollo Grp. Inc., 774 F.3d at 606 (noting that describing revenue growth as a "significant event"

13   is vague).  This statement cannot constitute a material misrepresentation.

14       Second, Plaintiffs allege that on May 24, 2012, VeriFone issued a press release announcing

15   its financial results for fiscal year ending April 30, 2012, where Mr. Bergeron stated: "We are very

16   pleased with our performance, particularly the acceleration in organic growth and the increase in

17   Hypercom-brand sales.  We remain confident in our outlook for the year."  Second Am. Compl. at

18   ¶ 101.  According to Plaintiffs, this statement was misleading because Mr. Bergeron failed to

19   disclose that the R&D expenditures were focused on long-term service initiatives at the expense of

20   near-term hardware and software features.  Id. at ¶ 102.  The court disagrees with Plaintiffs.  The

21   alleged omission is out of context to the statement made by Mr. Bergeron, suggesting that

22   Plaintiffs, through argument, is seeking to add context by attaching certain facts to Mr. Bergeron's

23   statement.  There are no facts that would require Mr. Bergeron to specifically state that the R&D

24   expenditures were focused on long-term service initiatives.  See Police Ret. Sys. of St. Louis v.

25   Intuitive Surgical, Inc., 759 F.3d 1051, 1061 (9th Cir. 2014) (noting that securities laws "prohibits

26   only misleading and untrue statements, not statements that are incomplete"); Matrixx Initiatives,

27   Inc. v. Siracusano, 563 U.S. 27, 131 S. Ct. 1309, 1321 (2011) (noting that Section 10(b) and Rule

28

Case No.: 5:13-cv-01038-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    10b-5(b) "do not create an affirmative duty to disclose any and all material information").  As

2    such, the alleged statement is insufficient to constitute a material misrepresentation or omission.

3           Third, Plaintiffs allege that the statements Mr. Bergeron made on the September 5

4    conference call (see Second Am. Compl. at ¶ 111) were misleading because PaaS sales were

5    decreasing, the transition to a PaaS business was going slower than was represented to investors,

6    and the revenue derived from services could not make up for the shortfall in the revenue derived

7    from hardware sales.  Id. at ¶ 112.  Again, through argument, Plaintiffs are seeking to create

8    context to Mr. Bergeron's statement without showing why the omission would be material.

9    Moreover, such statements are akin to corporate optimism and opinion, and are therefore not

10   actionable as a material misrepresentation or omission.

11          Lastly, to support the argument that these statements were misleading, Plaintiffs point to

12   VeriFone's purported explanations for the lower-than-expected revenues announced on February

13   20, 2013.  Opp'n at 10.  VeriFone allegedly stated that the Company was executing steps to

14   address challenges such as "[i]ncreasing management focus and R&D investment on product

15   development and certifications to accelerate the release of in-demand products throughout fiscal

16   2013."  Second Am. Compl. at ¶ 131.  This allegation, however, does not support Plaintiffs'

17   argument that the statements were misleading, but rather reflects the Company's self-evaluation

18   on ways to improve.  In sum, Plaintiffs have inadequately pled a material misrepresentation or

19   omission as it pertains to VeriFone's allocation of R&D funds.

20                          c.   *The SAIL Platform*

21          VeriFone developed SAIL, a mobile payment platform, when it purchased ChargeSmart.

22   Second Am. Compl. at ¶ 51.  VeriFone launched SAIL in May 2012.  Id.

23          Plaintiffs argue that the SAIL platform is an example of VeriFone's failure to integrate an

24   acquisition with VeriFone's services-focused business model.  Opp'n at 11.  Plaintiffs argue that

25   while the SAIL platform was unsuccessful, Mr. Bergeron failed to inform the market of the losses

26   associated with the SAIL platform.  Id

27          Plaintiffs allege that in the conference call on September 5, 2012, Mr. Bergeron stated:

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  "We're making great strides in the conversion of VeriFone into the world's premier software and

2  services platform for mobile payments, card payments and security."  Second Am. Compl. at ¶

3  111.  According to Plaintiffs, this statement was misleading because Mr. Bergeron had known

4  since August 2012 that a five-year forecast of SAIL showed losses would be incurred if VeriFone

5  kept SAIL.  Id. at ¶ 51.  According to Plaintiffs, at the time of the conference call, Mr. Bergeron

6  knew that SAIL would be sold or closed.  Id.

7      Plaintiffs fail to clearly show how Mr. Bergeron's alleged statement is a material

8  misrepresentation or omission if, as Plaintiffs concede, Mr. Bergeron made no mention of SAIL.

9  See id.  As discussed above, the statements are more akin to corporate optimism and puffery than

10  an actionable misrepresentation.  In addition, to the extent Plaintiffs contend it is a material

11  omission, there is no indication that the purported omission was material to the statement such that

12  it can be actionable under securities laws.  Therefore, Plaintiffs' allegations as to the SAIL

13  platform are insufficient.

14          d.  *SEC Permanent Injunction*

15      Lastly, Plaintiffs contend the similarity between Defendants' conduct in 2007 that formed

16  the basis for the SEC injunction imposed in 2009 and Defendants' conduct alleged in this action

17  establish a pattern of conduct that supports a strong inference of falsity and reckless conduct.

18  Opp'n at 13.  Plaintiffs then discuss a different private securities fraud class action that involved

19  Defendants, and contend that the facts in this action are similar to that action, and therefore

20  Plaintiffs' allegations are sufficient.  Opp'n at 14.  This argument, however, is misplaced since

21  Plaintiffs do not allege any misrepresentations or omissions made by Defendants within the Class

22  Period that involve the SEC injunction.  Moreover, the court will evaluate Plaintiffs' allegations

23  only as it pertains to this action.  In doing so, the court determines that Plaintiffs' allegations are

24  inadequate.

25      In sum, Plaintiffs have not adequately pled the first element of a material misrepresentation

26  or omission because they do not offer a statement of fact upon which a reasonable investor could

27  have relied.  See e.g., Reese v. Malone, 747 F.3d 557, 574 (9th Cir. 2014) (finding specific

28

statements that "lend an element of certainty to a situation previously indicating risk" is inherently misleading, and thus a material misrepresentation).  Instead, the purported misrepresentations involve business puffing, or vague and optimistic statements that are not actionable as a securities violation.

### ii.   Scienter

Plaintiffs have sufficiently alleged one material misrepresentation—VeriFone's press release issued on December 14, 2011 stating that the company "finished 2011 with another year of record revenues and record profit."  See supra at § III(A)(i)(a).  Since this is the only statement that satisfied the first element of a claim under Section 10(b) and Rule 10b-5, the court will evaluate the second element of scienter as it pertains to this material misrepresentation.

The PSLRA requires that "the complaint shall, with respect to each act or omission . . ., state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  "A defendant who makes misrepresentations or omissions either intentionally or with deliberate recklessness acts with scienter."  Apollo Grp. Inc., 774 F.3d at 607.  A two-part inquiry is conducted to determine whether scienter has been adequately pled: (1) the court "determine[s] whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter;" and (2) "if no individual allegation is sufficient, [the court] conduct[s] a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness."  Id. (quoting N.M. State Inv. Council v. Ernst & Young LLP, 641 F.3d 1089, 1095 (9th Cir. 2011)).

Here, Plaintiffs contend there are four types of allegations that raise a strong inference of scienter.  First, Plaintiffs argue that the magnitude of VeriFone's less-than-expected revenue results and its temporal proximity to the guidance VeriFone provided to the market ten weeks earlier support the inference of scienter.  Opp'n at 20.  Plaintiffs allege that on December 13, 2012, the Company announced its guidance for the first quarter of 2013 as $490 to $500 million.  Second Am. Compl. at ¶ 116.  On February 20, 2013, when the Company announced its

Case No.: 5:13-cv-01038-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1   preliminary financial results for the first quarter of 2013, the Company disclosed revenues of $424

2   to $428 million.  Id. at ¶ 131.  This constituted a $70 million reduction than what was announced

3   in December 2012.  Id.

4          Given that on December 14, 2011, Mr. Bergeron stated that the company was ending 2011

5   with "record revenues and record profit," but the preliminary financial results announced on

6   February 20, 2013 showed a shortfall, the connection between the two appear to be attenuated.  It

7   is possible that the 2011 year ended strong, but the following year encountered financial

8   challenges that led to a reduction in revenue at the end of 2012 and beginning 2013.  As such, this

9   alleged misrepresentation, on its own, is insufficient to support an inference of scienter.

10         Second, Plaintiffs argue that the termination of Mr. Bergeron and Mr. Dykes could support

11   an inference of scienter.  Opp'n at 21.  Plaintiffs allege that on February 4, 2013, the Company

12   disclosed the "retirement" of Mr. Dykes, but he was actually terminated; and on March 11, 2013,

13   Mr. Bergeron announced his resignation as CEO and Board Member.  Second Am. Compl. at ¶¶

14   10, 65, 130.  According to Plaintiffs, the timing of their departures supports an inference of

15   scienter because Mr. Dykes was terminated two weeks before the February 20, 2013

16   announcement and Mr. Bergeron resigned three weeks after the February 20 announcement.

17   Opp'n at 21.  The court disagrees because, again, the connection between the purported

18   misrepresentation made in December 2011 is too attenuated to these termination and resignation

19   that occurred in 2013.  These allegations are also insufficient to support an inference of scienter.

20         Third, Plaintiffs argue that Mr. Bergeron and Mr. Dykes' hands-on approach as managers

21   and access to non-public information indicate they had superior knowledge as to the Company's

22   core operations, thus constituting scienter.  Opp'n at 22.  In their complaint, Plaintiffs allege Mr.

23   Bergeron and Mr. Dykes were privy to non-public information concerning the Company's

24   business, finances, products, markets, and present and future business prospects.  Second Am.

25   Compl. at ¶ 21.  They further allege that, according to a confidential witness, the executives told

26   certain finance controllers that they needed "to find another $5 million or another $8 million to

27   book as revenue," to make up for the revenue numbers that failed to meet the Company's

Case No.: 5:13-cv-01038-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    forecasts.  Id. at ¶ 62.  These allegations, however, are inadequate because Plaintiffs fail to

2    specifically plead the time, place, and manner in which the purported statement about finding

3    "another $5 million or another $8 million" took place.  As such, these allegations lack specificity

4    in pleading an inference of scienter.

5         Lastly, Plaintiffs argue that Defendants' previous interaction with the SEC and the SEC

6    permanent injunction establishes a pattern that supports an inference of scienter in this case.  As

7    discussed above, this argument is unpersuasive.  See supra § III(A)(i)(d).

8         When considering the allegations holistically, the purported misrepresentation made in

9    December 2011 is too attenuated to the events that occurred in late 2012 to early 2013 in order to

10   raise an inference of scienter.  Given the lack of temporal proximity or other persuasive argument

11   to raise such an inference, Plaintiffs' allegations are insufficient to proceed with this claim.

12        ### iii.   Loss Causation

13        Assuming, however, that Plaintiffs were able to meet the second element of scienter, the

14   court will evaluate the sixth element of loss causation.  "To prove loss causation, the Plaintiffs

15   must demonstrate a causal connection between the deceptive acts that form the basis for the claim

16   of securities fraud and the injury suffered by the Plaintiffs."  Apollo Grp. Inc., 774 F.3d at 608.

17        To argue loss causation, Plaintiffs rely on VeriFone's February 20, 2013 announcement

18   regarding the lower-than-expected revenues, and the subsequent analyst reports commenting on

19   the announcement.  Opp'n at 24.  On February 20, VeriFone allegedly issued a press release that

20   listed various factors contributing to the low revenue, such factors included the business model

21   transition.  Second Am. Compl. at ¶ 131.  Following the announcement, Reuters published a news

22   article that stated: "Deutsche Bank, in a client note, said the company had finally admitted it had

23   failed to execute on its plans to move to a more subscription-based service model."  Id. at ¶ 132.

24   Furthermore, PiperJaffray allegedly noted from its discussions with VeriFone's management that

25   the Company "believes it over-emphasized the services business to the detriment of the systems

26   (hardware) business.  This created a serious air pocket for sales activity."  Id. at ¶ 133.

27        While the less-than-expected revenue and subsequent reports refer to VeriFone's

28

Case No.: 5:13-cv-01038-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    unsuccessful business model transition, the alleged statements sound more as a critique of poor

2    performance rather than an indication of securities fraud.  The allegations show that VeriFone may

3    have made a poor business decision in its business model transition, but does not show that

4    Defendants engaged in fraudulent misconduct which led to lower revenues.  As such, Plaintiffs

5    have insufficiently pled loss causation.

6         In sum, Plaintiffs have failed to adequately plead a claim under Section 10(b) and Rule

7    10b-5.  Therefore, Defendants' motion to dismiss this claim is granted.

8         **B.    Claim Under Section 20(a)**

9         Defendants move to dismiss Plaintiffs' Section 20(a) claim on the grounds that Plaintiffs

10   have failed to allege a primary violation of Section 10(b).  Mot. at 18.  "To establish a cause of

11   action under [Section 20(a) of the Exchange Act], a plaintiff must first prove a primary violation

12   of underlying federal securities laws, such as Section 10(b) or Rule 10b-5."  In re NVIDIA Corp.

13   Sec. Litig., 768 F.3d 1046, 1052 (9th Cir. 2014).  Here, since Plaintiffs fail to plead a claim under

14   Section 10(b) or Rule 10b-5, their claim under Section 20(a) must necessarily fail.  Accordingly,

15   Defendants' motion to dismiss this claim is also granted.

16   **IV.    CONCLUSION**

17        Based on the foregoing, Defendants' Motion to Dismiss Plaintiffs' Second Amended Class

18   Action Complaint is GRANTED.

19        Plaintiffs' claims are DISMISSED WITH LEAVE TO AMEND.  Any amended complaint

20   must be filed on or before April 15, 2016.

21

22        **IT IS SO ORDERED.**

23   Dated:  March 29, 2016

24   _____
     EDWARD J. DAVILA
25   United States District Judge

26

27

28
     Case No.: 5:13-cv-01038-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California